McFARLAND, Respondent, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

(212 N. W. 493.)

(File No. 5210.   Opinion filed March 7, 1927.)

1. **Appeal and Error—Court Rules—Evidence on Phase of Case Not in Dispute Need Not Be Set Out Where It Affirmatively Appears that Appellant Concedes Sufficiency of Such Omitted Evidence (Supreme Court Rule No. 4).**

    Under Supreme Court rule No. 4, where there is considerable evidence touching on phase of case not in dispute, it is unnecessary to set out such evidence where it affirmatively appears that appellant concedes sufficiency of omitted evidence to support burden of proof on such phase of case, but without such concession all evidence is material on question of sufficiency of evidence.

2. **Appeal and Error—Assignment Challenging Sufficiency of Evidence Is Properly Considered Where Part of Evidence Was Omitted, Where Respondent Failed to Show Willful Violation of Rules (Supreme Court Rule No. 4).**

    Assignment of error covering refusal to direct verdict and challenging sufficiency of evidence to support verdict is properly considered, where part of evidence on phase of case not in dispute was omitted, but respondent failed to show willful violation of Supreme Court rule No. 4, relating to omitted evidence, and offered no amendment to evidence.

3. **Appeal and Error—Negligence—Where Verdict Was for Plaintiff on Conflicting Evidence, Plaintiff's Evidence Will Be Considered as True on Appeal, in Determining Issue of Contributory Negligence.**

    Where verdict was for plaintiff on conflicting testimony, plaintiff's evidence on issue of contributory negligence will be treated as true on appeal in determining sufficiency of evidence to support verdict, since conflicting testimony is for jury to decide.

4. **Railroads—Motorist Must Use Ordinary Care in Crossing Railroad.**

    Motorist was bound to use ordinary care for his safety in crossing railroad tracks behind standing train at crossing.

5. **Negligence—Under Doctrine of Last Clear Chance, Defendant Is Liable for Not Using Due Care to Prevent Injury After Discovery of Peril.**

    Under doctrine of last clear chance, negligence for which defendant can be held liable is not that which he may have been guilty of prior to discovery of plaintiff's peril, but negligence in not using due care to prevent injury after discovery of peril.

**6.    Railroads—Evidence of Railroad's Negligence as to Automobile Driver Held Insufficient for Jury.**

In action to recover damages for destruction of automobile in railroad crossing accident, evidence that railroad's negligence in starting freight train standing at crossing, as plaintiff was crossing in automobile, was cause of damage held insufficient to go to jury.

Note.—See, Headnote **(1)**, American Key-Numbered Digest, Appeal and error, Key-No. 757(3), 3 C. J. Secs. 1519, 1522; **(2)** Appeal and error, Key-No. 757(3), 3 C. J. Sec. 1522; **(3)** Appeal and error, Key-No. 930(1), 4 C. J. Secs. 2715, 2719; **(4)** Railroads, Key-No. 324(1), 33 Cyc. 981; **(5)** Negligence, Key-No. 83, 29 Cyc. 621; **(6)** Railroads, Key-No. 350(1), 33 Cyc. 1099.

On the question of care required of driver of automobile at railroad crossing, see annotation in 21 L. R. A. (N. S.) 794; 29 L. R. A. (N. S.) 924; 46 L. R. A. (N. S.) 702; 2 R. C. L. 1206; 1 R. C. L. Supp. 741; 4 R. C. L. Supp. 158.

Knowledge of defendant of peril on part of defendant recognized as basis of recovery under "last clear chance" doctrine, see 20 R. C. L. 143; 3 R. C. L. Supp. 1038; 4 R. C. L. Supp. 1339; 5 R. C. L. Supp. 1083.

Appeal from Circuit Court, Charles Mix County; Hon. R. B. Tripp, Judge.

Action by John E. McFarland against the Chicago, Milwaukee & St. Paul Railway Company. From a judgment for plaintiff, and an order overruling a motion for new trial, defendant appeals. Reversed with directions.

*Ed. L. Grantham* and *H. O. Hepperle,* both of Aberdeen, for Appellant.

*Caster & Cassidy,* of Lake Andes, and *F. B. Morgan,* of Wagner, for Respondent.

BURCH, J. This is an action to recover damages for the destruction of an automobile in a railroad crossing accident. From a judgment in favor of plaintiffs and an order overruling a motion for new trial, defendant appeals.

The first assignment of error covers the refusal of the court to direct a verdict in favor of defendant and challenges the sufficiency of the evidence to support the verdict returned by the jury. A considerable portion of the testimony of some of the witnesses and the entire testimony of one of the witnesses was omitted from

appellant's brief. Respondent calls attention to these omissions, but does not suggest amendments to the statement or supply the evidence omitted. Appellant in its reply brief explains that the omitted evidence was immaterial and claims that there was sufficient evidence set forth in the abstract to present all questions involved in the case. Counsel say:

"The only subject omitted from the testimony is the value and description of the car, not material to any question raised on this appeal."

[1] The purpose of rule No. 4, Supreme Court Rules, requiring abstracting of the evidence and the printing only of such as is material to a proper consideration of the errors assigned is to get the facts before the court with the fewest words. Where there is considerable evidence touching upon some phase of the case not in dispute, it is not necessary that such evidence be set out, if it affirmatively appears that appellant concedes the sufficiency of the omitted evidence to support the burden of proof on such phase of the case. Without such concession, all evidence is material on the question of the sufficiency of the evidence, or the right to a directed verdict.

[2] However, any fair effort to shorten the record and get the contentions of counsel before the court briefly is to be encouraged. Appellant, in pointing out wherein the evidence is insufficient, makes no allusion to any want of proof of damage and claims no advantage upon any point covered by the omitted evidence, and therefore cannot be charged with unfair violation of the rule. The omitted facts are tacitly conceded. Good practice would have expressly conceded them. Where respondent is unable to show willful violation of the rule, it is incumbent upon him, if he deems any of the omitted record material, to point out such as he deems material to be considered as an amendment to that made by appellant. Respondent says:

"Appellant did not in its abstract set out all of the material evidence in the case, and it has not claimed or anywhere stated, asserted, or certified that it has done so."

From this and the authorities cited, we think respondent must have overlooked the certificate on page 54, folio 161, part 1, of appellant's brief as follows:

"The foregoing contains all the evidence taken upon the trial,

material to this appeal or to any question raised upon this appeal."

Respondent having failed to show a willful violation of the rule of this court above alluded to and having offered no amendment to the evidence, the first assignment of error is properly considered.

The facts on which plaintiff relies for recovery are these: Appellant's line of railroad runs through the city of Wagner from east to west; the main street of Wagner intersects the railroad at right angles, extending north and south. It is paved 86 feet in width. On August 20, 1920, appellant's freight train, composed of an engine, thirteen freight cars, and a caboose, was standing on the main track, the engine facing west and the caboose extending back about halfway across and into Main street. Respondent's son, driving a five-passenger Oakland automobile, came from the north, crossed the track behind the standing train and drove to an elevator on the west side of Main street, about 40 feet south of the track on which the train was standing. After a few minutes at the elevator he came out, climbed into the auto, turned to the left in a half circle, came back onto Main street, started north, and attempted to cross the track about 8 feet behind the train. He says the train was standing as before, and as he attempted to pass behind the train the train started to back, the caboose gave a sudden lurch, struck the automobile, and pushed it along the track over the pavement 18 feet, off the pavement a few feet, where it tipped over and was badly wrecked and damaged; that he had no warning that the train was about to move; that no whistle was blown or bell rung, and no one was stationed at the rear of the train to give warning or stop traffic over the crossing.

[3] The witnesses for appellant deny this and say the bell was rung, the whistle was blown, that one man was on the rear platform of the caboose, another near the edge of the street to the east, and that the conductor observed the street was clear before giving the signal to back; that the train was moving when the driver of the auto came upon the street; that he was ordered to stop, did slow up, and then attempted to cross despite the warning. As the conflicting testimony was for the jury to decide, we will treat the testimony of plaintiff's witnesses as true on the question of contributory negligence. It is not disputed, however, that the driver of another auto had stopped his car before or about the

time respondent's son came upon the street and was waiting for the crossing to be cleared.

The case was submitted to the jury upon two theories, that of negligence and contributory negligence, and that of the right to recover under the doctrine of the "last clear chance."

[4] Assuming that appellant was negligent in starting the train as it did, was respondent guilty of contributory negligence? What care was required of him, under the circumstances, in crossing behind the standing train? As a comprehensive answer, it may be said he was bound to use ordinary care for his safety. The pavement was 86 feet in width. If respondent is right in his estimate of the position of the caboose in the street, he had 43 feet in width of paved street behind the caboose over which he could pass in making the crossing. Disregarding his estimate and taking his measurements his car was pushed 18 feet on the pavement, this with the 8-foot clearance he was giving the caboose gave him 26 feet of clear passage over the crossing. Instead of keeping to the right of this open portion of the street, he chose to keep to the left to within 8 feet of the caboose. It is well known to all familiar with trains that a train made up, with the engine attached, may start and move either way; that the engineer starts upon signal from one of the train crew; that some time is consumed in transmitting the signal and getting a response in the movement of the train; that in starting, the engine moves first, then each car successively; that each car starts with a jump as the moving engine in backing strikes the draw bar; and that this increases in momentum with the added weight of each car set in motion, so that at the end of a long train the rear car will start quite suddenly, and, owing to the manner of coupling, the rear car may drift a considerable distance after the engine stops. An ordinarily prudent person, knowing these things, would not choose to pass close to the rear of a standing train where the way was wide and clear.

Respondent contends that the train was standing. If so, there was no way of calculating the time when the crossing might be closed by the train, as there would have been if the train were in motion at a uniform speed. Time need not enter into his calculations. Distance is all that need be considered. Because the train may start, one should keep far enough away to avoid injury if it

does. The driver chose to go too close. Not because he was crowded too close, nor because the road or the crossing was better, nor because of any necessity for doing so. He makes no claim that he was ignorant of the danger. He was careless and negligent in attempting to pass unnecessarily too close to such train.

There are a number of circumstances that indicate the driver is mistaken when he says the train was standing still when he started to cross. It is undisputed that he came onto the street about 40 feet south of the crossing; that he was driving "in high" at a rate of 10 or 12 miles an hour; that he passed a waiting auto; that only a few feet from the track he slowed down, then swung to the east and in an arc to make the crossing. Such conduct is consistent with an attempt to pass a moving train, but not a standing train. His rapid approach, his sudden slowing down, then swinging to the right in an arc around the end of the caboose where he was caught strongly suggests a young man's daring in an attempt to get around a slowly moving train. A great deal of the evidence tends to prove the train was moving at the time, that proper warning was given and not heeded.

The verdict does not disclose whom the jury believed in this respect, for the court instructed the jury as follows:

"If you find from the evidence that it is not true that the train to which the caboose was attached was standing still when the boy started to cross that track, the plaintiff would not be entitled to recover, unless you find by a preponderance of the evidence that, as alleged by plaintiff in his complaint, after the automobile was struck, an employee saw the perilous danger in which the boy was with his car, and did not exercise ordinary and reasonable care to avert injury to the automobile by stopping the train."

[5] This instruction was excepted to and error is assigned thereon. The court probably had in mind the law as expressed by many courts, known as the doctrine of the "last clear chance" —a doctrine holding one liable for negligently injuring another, if after discovery of his danger the accident can then be avoided by due care, although the one injured was negligent in getting into such dangerous position. Under that doctrine, negligence for which the defendant can be held liable is not that which he may have been guilty of prior to a discovery of plaintiff's peril, but

negligence in not using due care to prevent the injury after discovery of the peril.

That doctrine has no application to the facts of this case. There is no evidence that the train was not stopped as quickly as possible after any member of the crew saw the peril the young man was in. The conductor says as soon as he knew of his peril he gave the emergency stop signal and as soon as possible stepped between the cars and "broke the air," although by doing so he imperiled his own safety. No one denies this, nor is there any evidence, direct or circumstantial, from which the jury could infer that anything could have been done which was not done to avert the accident.

[6] Defendant, at the close of all the testimony, moved the court to direct a verdict in favor of the defendant. This motion should have been sustained.

The judgment and order appealed from are reversed, and the trial court is directed to enter judgment in favor of the defendant.

CAMPBELL, P. J., and GATES, POLLEY, and SHERWOOD, JJ., concur.